UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

February 21, 2018

LETTER TO COUNSEL

      RE:    *Thomas A. Layson v. Commissioner, Social Security Administration*
            Civil No. SAG-17-1183

Dear Counsel:

On April 29, 2017, Plaintiff Thomas A. Layson petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). [ECF No. 1]. I have considered the parties' cross-motions for summary judgment and Plaintiff's Reply [ECF Nos. 20, 23, 24]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Mr. Layson's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405. This letter explains my rationale.

Mr. Layson protectively filed his claims for DIB and SSI on October 2, 2012 and October 15, 2012, respectively. (Tr. 162-66, 177-82). He alleged a disability onset date of September 15, 2008. (Tr. 175, 177). His claims were denied initially and on reconsideration. (Tr. 71-84, 85-104). A hearing was held on July 27, 2015, before an Administrative Law Judge ("ALJ"). (Tr. 39-70). Following the hearing, the ALJ determined that Mr. Layson was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 17-38). The Appeals Council denied Mr. Layson's request for review, (Tr. 1-5), so the ALJ's 2015 decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Mr. Layson suffered from the severe impairments of "discogenic/degenerative back disorder, diabetes mellitus, obesity, peripheral neuropathy, and coronary artery disease." (Tr. 22). Despite these impairments, the ALJ determined that Mr. Layson retained the residual functional capacity ("RFC") to "perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c)." (Tr. 25). The ALJ then determined that Mr. Layson was capable of performing past relevant work as a construction supervisor. Tr. 31-32). Alternatively, after considering the testimony of a vocational expert ("VE"), the ALJ also found that Mr. Layson could perform other jobs existing in significant numbers in the national economy, and that, therefore, he was not disabled. (Tr. 32-33).

On appeal, Mr. Layson argues that the ALJ erroneously assessed his RFC by: (1) failing to order a consultative examination to obtain an opinion regarding his physical limitations; and

(2) failing to include mental limitations, despite acknowledging that he suffers from an affective disorder. [ECF No. 20-1 at 9-15]. These arguments are addressed below.

Mr. Layson first argues that a proper RFC assessment required a consultative examination, because there were no "physical assessment[s] from any treating or examining source evaluating" his limitations, "though he testified to significant . . . impairments." *Id.* at 10. Social Security regulations provide that the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting SSR 96-8P, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). In doing so, an ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), *as amended* (Dec. 13, 2000). With respect to physical RFC, "[e]xertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Importantly, "an ALJ has discretion in deciding whether to order a consultative examination." *Sheppard v. Comm'r, Soc. Sec. Admin.*, No. CIV. SAG-13-1239, 2014 WL 2154169, at *2 (D. Md. May 20, 2014) (citing 20 C.F.R. § 416.919a(a); *Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003)). Such an examination "is only needed when the evidentiary record before the ALJ is inadequate." *Id.* (citing *France v. Apfel*, 87 F. Supp. 2d 484, 489-90 (D. Md. 2000)). Thus, "consultative examination[s] may be used to 'resolve any conflicts or ambiguities within the record' or 'to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision.'" *Id.* (quoting *Kersey v. Astrue*, 614 F. Supp. 2d 679, 693 (W.D. Va. 2009)).

Here, a consultative examination was not required because the existing medical evidence of record, together with Mr. Layson's July, 2015 hearing testimony, provides substantial evidence for the ALJ's conclusion that he is not disabled. First, the ALJ detailed the nonmedical evidence, including Mr. Layson's daily activities and subjective allegations of symptoms and limitations. (Tr. 23, 25-27). Specifically, the ALJ explained that Mr. Layson reported: (1) having no problems with personal care tasks; (2) preparing daily meals; (3) completing household tasks, including vacuuming, mopping, mowing a two-acre lawn, and laundering; and (4) paying bills, maintaining a check book and savings account, and being able to "finish [activities] he started." (Tr. 23). Moreover, the ALJ detailed several medical records from Tri-State Community Health Center, where Mr. Layson's physical exams consistently demonstrated unremarkable findings. (Tr. 26-28, 317-20, 378-88). Although Mr. Layson argues that the handwritten medical records are "illegible," the ALJ interpreted and cited to various handwritten records throughout his decision. (Tr. 22-31). The records further revealed that Mr. Layson's "treatment has been relatively limited and conservative overall," and that his severe impairments have not "even [required] frequent physician visits . . . ." (Tr. 29). Finally, because their opinions were consistent with the medical evidence, the ALJ accorded "great weight" to the state agency medical consultants, Drs. Totoonchie and Serpick, who each opined that Mr. Layson could perform medium work. (Tr. 31, 74-75, 90-91). Taken as a whole then, the ALJ was

within his discretion to forgo requiring a consultative examination regarding Mr. Layson's physical limitations.

Mr. Layson's second argument, that the ALJ erred by failing to afford more weight to consultative examiner Dr. Leigh Knotts's opinion and by failing to include a mental limitation within his RFC, is also without merit. At step two of the sequential evaluation, the ALJ must determine whether a claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). In evaluating the severity of mental impairments, the ALJ must apply the "special technique," which requires consideration of the mental impairments and criteria listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 § 12.00. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The relevant listings therein consist of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id*. § 12.00(A).

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id*. § 404.1520a(c)(4).

Here, ALJ found that Mr. Layson had no limitation in activities of daily living and social functioning and only mild limitation in concentration, persistence or pace. (Tr. 23). As such, the ALJ found that Mr. Layson's medically determinable mental impairment of affective disorder "cause[s] no more than minimal limitation in [his] ability to perform basic mental work activities and is therefore nonsevere." *Id.*

Despite finding that Mr. Layson's mental impairment was nonsevere, however, Social Security Regulations require that, in making an RFC assessment, an ALJ must "consider all of [the claimant's] medically determinable impairments . . . including . . . [those] that are not 'severe[.]'" 20 C.F.R. § 404.1545. Mr. Layson argues that the ALJ neglected this obligation. [ECF No. 20-1 at 12-13] (contending that, though the ALJ found a limitation in the special technique, he "failed to include any mental impairments in the RFC" and thus "failed to follow established procedure"). Mr. Layson is mistaken. In his RFC explanation, specifically while analyzing Dr. Knotts's opinion, the ALJ expressly considered Mr. Layson's mental impairments, finding that "the evidence [was] not supportive of any mental limitations and [that Mr. Layson was] capable of more than simple tasks." (Tr. 30). Importantly, "although some consideration is required, there is no requirement that the RFC reflect a claimant's non-severe impairments to the extent the ALJ reasonably determines such impairments do not actually create functional limitations on a claimant's ability to work." *Perry v. Colvin*, No. 2:15-CV-01145, 2016 WL

1183155, at *5 (S.D.W. Va. Mar. 28, 2016) (citing 20 C.F.R. § 404.1545(a)(1)); *see also Presnell v. Colvin*, No. 1:12-CV-299-FDW, 2013 WL 4079214, at *4 (W.D.N.C. Aug. 13, 2013) (rejecting the claimant's position that the ALJ erred in failing to consider non-severe mental impairments where the ALJ "determined in step three that [the] mental impairments were non-severe, and as a result, concluded that they caused little or no functional limitation which would impact the ALJ's analysis of [the claimant's] RFC"). Instead, "an ALJ 'need only include in the RFC those limitations which he finds credible.'" *Perry*, 2016 WL 1183155, at *5 (quoting *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x. 159, 163 (3d Cir. 2008)).

Moreover, despite Mr. Layson's assertions, while Dr. Knotts found that he was "able to understand and complete simple tasks[,]" (Tr. 337), there is no evidence that this finding was "to the exclusion of more complex tasks that would be required in skilled work." [ECF No. 20-1 at 14]. As Defendant notes, "[i]t is not clear from the opinion whether Dr. Knotts even made an assessment of whether Mr. Layson could perform complex tasks . . . ." [ECF No. 23-1 at 12]. Further, though Mr. Layson argues that the exclusion of mental limitations from his RFC was "even more harmful considering" Dr. Knotts's opinion, Dr. Knotts specifically opined that: (1) his eye contact and speech pattern were within normal limits; (2) his concentration was within normal limits; (3) his judgment and insight seemed good; and (4) he scored a total of 30 points out of a possible 30 on a cognitive assessment and was oriented to time and place. (Tr. 30). Thus, in crediting this portion of Dr. Knotts's opinion, together with the remaining evidence of record, substantial evidence supports the ALJ conclusion that Mr. Layson's mental impairments caused no functional limitation which would affect his RFC, and, as such, the ALJ properly excluded any such limitation. (Tr. 30). Remand is thus not warranted on this ground.

For the reasons set forth above, Mr. Layson's Motion for Summary Judgment [ECF No. 20] is DENIED, and Defendant's Motion for Summary Judgment [ECF No. 23] is GRANTED. The Clerk is directed to CLOSE this case. Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge